# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| BROCK FREDIN,<br><br>                Plaintiff,<br><br>   --against--<br><br>ELIZABETH A. CLYSDALE,<br>DAVID E. MCCABE,<br>GRACE ELIZABETH MILLER,<br>CATHERINE MARIE SCHAEFER,<br>LINDSEY MIDDLECAMP,<br>TERESA WARNER,<br>GURDIP SINGH ATWAL<br>CHRISTY SNOW-KASTER<br><br><br>          Defendants. | Case No.  **18-cv-510** |

## MEMNORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A
## PRELIMINARY INJUNCTION AND A *YOUNGER* BAD FAITH HEARING

Brock Fredin
1905 Iris Bay
Hudson, WI 54016
(612) 424-5512 (tel.)
brockf12@gmail.com
*Plaintiff, Pro Se*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………... 1

RELEVANT FACTS …………………………………………………………….. 1

GOVERNING STANDARD ……………………………………………………… 1

ARGUMENT …………………………………………………………………… 2

    I.    PLAINTIFF HAS SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS ………… 2

      A.  The Prohibition Against "Writings or other Communications" are Overly Broad and Unconstitutional as Applied to a HRO…………………………… 8

      B.  The Prohibition Against "Made Available for Public Hearing" are Overly Restrictive and Unconstitutional as Applied to a HRO Where City Attorney Middlecamp Has No Reasonable Expectation of Privacy…………………….. 8

      C.  The Applicability of the *Younger* Abstention Doctrine…………………………. 9

      D.  The Exceptions to the *Younger* Abstention Doctrine………………………….13

      E.  The Applicability of the Bad Faith / Fraud Exception…………………………. 14

          i.  Plaintiff Does Not Have an Avenue Open for Review of the Constitutional Claims in State Court…………………………………… 14

         ii.  Bad-Faith and Reliance on Fabricated Findings…………………… 15

       iii.  Reliance on Findings Plaintiff Was Not Given Notice or a Full and Fair Opportunity to Defend…………………………………………… 17

       iv.  The Defendants and City Attorney Middlecamp, Defendant Schaefer, and Defendant Miller Have Exculpatory Evidence Illustrating Their Bad Faith……………………………………………………………………… 17

        v.  The Prior Restraint Contempt Proceedings Is Part of an Overall Scheme of Harassment Directed at Plaintiff………………………… 18

       vi.  The Applicability of the "Extraordinary Circumstances" Exception………………………………………………………………… 19

II.     PLAINTIFF WILL SUFFER IRREPARABLE INJURY WITHOUT THE INJUNCTION.... 20

III.    THE INJUNCTION WILL NOT SUBSTANTIALLY INJURE OTHERS............................ 22

IV.     THE INJUNCTION FURTHERS THE PUBLIC INTEREST............................................... 23

V.      PLAINTIFF REQUESTS A BAD-FAITH *YOUNGER* HEARING....................................... 24

CONCLUSION…………………………………………………………………………... 24

# TABLE OF AUTHORITIES

## Cases

3005 Cedar, LLC v. City of Minneapolis, 2010 WL. 455307 at *3 (D.Minn. Feb. 3, 2010)..................................................................10

Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002)........................5

Awolsei v. Ashcroft, 341 F.3d 227, 232 (3d Cir. 2003)........................11

Badami v. Flood, 214 F. 3d 994 (Court of Appeals, 8th Circuit 2000)..11

Beahrs v. Lake, Case No: C797100519, MInn. Ct. Appeals. 1998..........9

Buckley v. Valeo, 424 U.S. (1976)........................................................3

Diamond "D" Constr., 282 F.3d............................................................19

Elrod v. Burns, 427 U.S. 347, 373 (1976) ............................................21

FEC v. Wisconsin Right to Life, 127 S. Ct. 2652, 2670 (2007).............22

First Nat'l Bank of Boston v. Bellotti, 435 U.S (1978) .........................24

Gisbson v. Berryhill, 411 U.S. 564 (1973) ............................................12

Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 101 (2d Cir. 2004) ...11

Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 237-38 (1984)....10

Huffman v. Pursue, Ltd., 420 U.S. 592, 611 (1975) .............................13

Keezer v. Spickard, 493 N.W.2d 614, 619 (Minn. App. 1992)...............9

Kern v.Clark, 331 F.3d 9, 10 (2d Cir. 2003)........................................24

Minnesota Bearing Co. v. White Motor Corp., 470 F.2d 1323 (8th Cir. 1973) ........................................................................................................2

Mistretta v. U.S., 488 U.S. 361, 404 (1989) .........................................12

Near v. Minnesota ex rel. Olson, 283 US 697 (1931)............................7

Night Clubs, Inc. v. City of Fort Smith, 163 F.3d 475, 477 n.1 (8th Cir. 1998) ......................................................................................................10

RAV v. City of St. Paul, 505 US 377 (1992)...........................................8

Riggins v. Bd. of Regents of University of Nebraska, 790 F. 2d 707 – (Court of Appeals, 8th Circuit)............................................................17

United Transportation Union, 450 F.3d at 620 .....................................23

Virginia v. American Bookseller's Ass'n Inc., 484 U.S. 383, 393 (1988) ......................................................................................................21

Walker v. City of Birmingham, 33 U.S. 307 (1967)...............................15

Ward v. Rock Against Racism, U.S. 661*661, 109 S.Ct. 2746, 105
    L.Ed.2d 661 (1989) ...............................................................................4
Williams v. Lambert, 46 F.3d 1275, 1282 (2d Cir. 1995).....................13

<u>Rules</u>

Federal Rule of Civil Procedure 65 ......................................................23
Rule 3.8 of the Rules of Professional Conduc .....................................16

Plaintiff Brock Fredin ("Plaintiff") respectfully submits this Memorandum of Law in Support of his Motion for a Preliminary Injunction and a *Younger* Bad Faith Hearing (the "Motion"), pursuant to Federal Rule of Civil Procedure 65(a) *and Kern v. Clark*, 311 F.3d 9, 12 (2d Cir. 2003), against Defendants Elizabeth A. Clysdale ("Referee Clysdale"), Teresa Warner ("Judge Warner"), Gurdip Singh Atwal ("Judge Atwal or Judge Tony Atwal"), and Christy Snow-Kaster ("Referee Snow-Kaster") (collectively, "Defendants") seeking to enjoin the Prior Restraint contempt hearings matter brought by the Ramsey County District and Court against Plaintiff.

## PRELIMINARY STATEMENT

As set forth in the Amended Complaint, Plaintiff has been subjected to a now two-and-a-half-year campaign of harassment, terror and bad faith litigation by individuals within the Minneapolis City Attorney's Office, primarily emanating from City Attorney Middlecamp, Defendant Schaefer, and Defendant Miller.  Referee Clysdale presided over hearings in *Middlecamp v. Fredin, Schaefer v. Fredin where she rubber-stamps any harassment restraining order ("HRO")*, and signed the ex-parte Order in *Miller v. Fredin ("Miller v. Fredin")*.  These two individuals have used their authority on the bench and within the City Attorney's office to unlawfully and unconstitutionally inflict irreparable harm on Plaintiff, his family, and most importantly, the Constitution.

## RELEVANT FACTS

Plaintiff incorporates and refers the Court to Sections I – VI of the Amended Complaint for a recitation of the pertinent facts to this Motion.

## GOVERNING STANDARD

Four factors govern temporary restraining orders and preliminary injunctions:

> To warrant preliminary injunctive relief, the moving party must show (1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest. *Minnesota Bearing Co. v. White Motor Corp.*, 470 F.2d 1323 (8th Cir. 1973) (citations omitted)

## ARGUMENT

As set forth herein and in the Amended Complaint, the Ramsey County District Court Family Judicial Officers (Referee Clysdale, Judge Warner, Judge Atwal, and Referee Snow-Kaster) and City Attorney Middlecamp, Defendant Schaefer, and Defendant Miller are attempting to strip Plaintiff of his career and ability to earn a livelihood in a manner that is wholly inconsistent with Due Process.  Despite tacitly acknowledging their bad faith in bringing and pursuing the Prior Restraint Orders and contempt matters against Plaintiff, Referee Clysdale, Judge Warner, Judge Atwal and Referee Snow-Kaster continue to press on with the matter, even in violation of Minnesota Civil Procedure, their own rules and the Rules of Professional Conduct.  *See* Minn. R. Prof. Cond. 3.6 (Trial Publicity) and/or Minn. R. Civ. Proc. 11.02 (Improper and Pattern of Bad-Faith Harassment).  Where Plaintiff will suffer irreparable harm to his professional reputation and livelihood and where Plaintiff has also alleged facts suggesting a likelihood of success on the merits (Prior Restraint violations of the First Amendment), a preliminary injunction is necessary and appropriate in this case in order to preserve the status quo until this Court can make a final determination on the merits in this case.

I.    Plaintiff Has Substantial Likelihood of Success on the Merits

The Constitution mandates that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. This "guarantee has its fullest and most urgent application precisely to the conduct … [public] office." *Buckley v. Valeo*, 424 U.S. (1976) at 15 (citation omitted). If "Congress shall make no law," then how may government regulate First Amendment activities related to [public officials]? *Buckley* provided the answer: "The constitutional power of Congress to regulate is well established and is not questioned by any parties in this case." *See Id.* At 13 n.16 (also citing decisional authorities extending this power). This authority to regulate is self-limiting. If the government tries to regulate First Amendment activity that is not closely and clearly related, it goes beyond its authority to regulate.

The Amended Complaint in this action sets forth facts that demonstrate Plaintiff's likelihood of success on the merits and raises serious questions as to the merits of Plaintiff's Due Process claims that make them fair ground for litigation. Here, City Attorney Middlecamp, Defendant Miller, Defendant Schaefer, and Referee Clysdale are attempting to permanently take Plaintiff's freedom, free speech, and right to practice his career in a proceeding that has been executed in a manner that is entirely inconsistent with Due Process. More specifically, it has asserted offensive collateral estoppel against Plaintiff based on factual findings and assertions in Referee Clysdale's decision in *Middlecamp v. Fredin*. As the record bears out, the findings relied upon by the Ramsey County District Court were either manufactured by City Attorney Middlecamp, Defendant Miller, Defendant Schaefer, and Referee Clysdale in an effort to instigate collateral disciplinary proceedings against Plaintiff or rendered in a manner that thwarted Plaintiff any legitimate opportunity to litigate them in *Middlecamp v. Fredin, Miller v. Fredin, or Schaefer v. Fredin.*

Most important, however, the balance of hardships is decidedly tipped towards Plaintiff in this matter suggesting that preliminary equitable relief is appropriate. Here, without preliminary relief, Plaintiff will suffer irreparable harm to his reputation and ability to earn a living as well as significant stigma associated with any discipline that the Ramsey County District Court imposes through Prior Restraint contempt proceedings. The Defendants, on the other hand, suffers no hardship whatsoever from this Court issuing preliminary equitable relief until it can reach a final determination on the merits.  This is exemplified by the fact that the pattern of nearly eight (8) Show Cause hearings initiated by various Defendants in this matter have all been declined and/or dismissed.  Furthermore, these matters have been pending for nearly twenty-six months. During such time, the various Defendants have never moved successfully for Plaintiff's interim contempt.  Rather, Referee Clysdale deliberately scripted an unlawful and unconstitutional Prior Restraint order to invoke the Collateral Bar rule against Plaintiff and Defendants intentionally prolonged the matter in an effort to exhaust Plaintiff's limited financial resources in counsel fees. Thus, the balance of hardships tips categorically in Plaintiff's favor.

Moreover, the U.S. Supreme Court provided greater context in building the free speech clause ("Free Speech Clause") on the use of government regulation to restrict the "content" of speech.  In *Ward v. Rock Against Racism*, U.S. 661*661, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), the Court stated:  the public [may only] impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech …"

The first requirement under the Free Speech Clause is that the ordinance (or Referee Clysdale's Prior Restraint Order and enforcement through Contempt hearings) must be justified

without reference to the content of the regulated speech — i.e. the ordinance must be content-neutral.  In *Ward,* the Supreme Court indicated that the purpose of a [Government Order] the paramount consideration in determining content neutrality:

> The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.

*Id.* at 2754 (citations omitted).  In *Ward,* the Supreme Court considered the constitutionality of a New York City ordinance aimed at regulating the volume of amplified music originating from a bandshell in Central Park.  Here, Referee Clysdale created an unconstitutional Prior Restraint Order "because of disagreement with the message it conveys."

Lest there be any doubt as to the necessity of speech-protective lines, In *New York Times v. Sullivan*, the Court held "the benefit of any doubt [goes] to protecting rather than stifling speech," id. at 2667 (citing *New York Times v. Sullivan*, 376 U.S. 254, 269-70 (1964), "in a debatable case, the tie is resolved in favor of protecting speech," id. at 2669 n.7, and "the benefit of the doubt [goes to] speech, not censorship." Id. at 2674. In other words, free speech about public issues especially political ones, is so central and essential to our system of government that it is better to allow some theoretically-regulable speech to go unrestricted than to chill public debate. This approach is akin to our criminal jurisprudence, which says that it is better to let a guilty person go free than to convict an innocent person, except that chilling free speech affects not only the lone speaker, but also her hearers and our very system of government.  in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002): "The Government may not suppress lawful speech

as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse." Id. at 2670 (quoting Ashcroft, 535 U.S. 234 at 255). To do otherwise would "'turn[] the First Amendment upside down.'" Id. (citation omitted).

In other words, Referee Clysdale is tacitly denying Plaintiff's ability to criticize City Attorney Middlecamp by claiming "any other form of information by which a reader may identity [City Attorney Middlecamp]" which wholly restricts Plaintiff's right to pursue legal redress e.g., file federal complaints for defamation and/or post legitimate First Amendment protected criticism on his own Facebook and/or instigate a whistleblower website to bring awareness to public officials unethical activities i.e., unlawful swat raids, leaking confidential cases, harassment, stalking, @CardsAgstHrsmt revenge porn platforms, etc.

> **8. Other:** Writings or other communications by Respondent which are made available for public hearing or viewing and which contain addresses, telephone numbers, photographs or any other form of information by which a reader may contact, identify or locate Petitioner are acts of harassment and are prohibited by this order. Any communications made by Respondent under an identity or auspices other than his true name and which refer to Petitioner are acts of harassment and are prohibited regardless of the truth or falsity of any statement made about Petitioner.

(See Ex. 7 Am. Comp ¶¶ 5.) Moreover, illustrative of her pervasive gender-bias, Referee Clysdale is wholly ignoring the tabloid media campaign and the fifty (50) tweets targeting Plaintiff by City Attorney Middlecamp on @CardsAgstHrsmt that have utterly destroyed his livelihood and made him unemployable and tacitly punishing and retaliating against him for filing a federal complaint prior to her final order. In denying Plaintiff's constitutional rights, Referee Clysdale is showing her "disagreement with the message [Plaintiff] conveys." Such a pervasive restriction violates the Plaintiff's right to free speech and ability to seek legal redress. Such a perverse result would conflict with free speech precedent. Consequently, the court should

conclude that Referee Clysdale's Prior Restraint is not content-neutral and enjoin any contempt hearing that results.

The second requirement which Referee Clysdale's Prior Restraint Order must satisfy is that it be narrowly tailored to serve a significant governmental interest.  Determining whether Referee Clysdale has satisfied this requirement requires a two-part analysis. First, the court must determine whether the Prior Restraint Order and contempt hearings serves a governmental interest. The answer to this inquiry is clear.  There is little question that Judicial Officers do not have a significant interest in establishing content-biased zones in which certain speech and/or activities may take place at the abridgement of others.  In other words, Referee Clysdale is endorsing and enabling one set of speech i.e., City Attorney Middlecamp's Twitter platform @CardsAgstHrsmt and her orchestration of tabloid articles while simultaneously fundamentally denying Plaintiff's right to counter with factual analysis in the form of legitimate First Amendment speech.  See *Near v. Minnesota ex rel. Olson*, 283 US 697 (1931)  In *Near*, Chief Justice Hughes delivered an opinion that framed Referee Clysdale's Order in proper context:

> The fact that liberty of press may be abused does not make any less necessary the immunity of the press from prior restraint...a more serious evil **would result if officials could determine which stories can be published**

(*See Id*.)  It must be noted that Referee Clysdale is tacitly determining what can/cannot be published by claiming that "writings or other communications" are prohibited in violation of Plaintiff's guaranteed Constitutional rights to First Amendment speech.  (*See* Referee Clysdale Prior Restraint Order.  Ex. 7. Am. Comp ¶¶ 5.)

Finally, the court must determine whether Referee Clysdale's Prior Restraint Order and contempt hearings leaves open ample alternative channels of communication.  This part of the time, place, or manner regulation standard is least troublesome for the court. The Prior Restraint Order specifically denies virtually any and all speech related to City Attorney Middlecamp. (*See*

*Id.)*  The available alternative channels to criticize using legitimate First Amendment speech is abridged completely, unfortunately.  In other words, there are no available alternative channels in which to voice Plaintiff's opposition and seek legal redress without risking criminal liability.  This is particularly troublesome considering that City Attorney Middlecamp is a public official and holds high office.

Accordingly, the Court must find that this is genuine issue of material fact as to whether the Prior Restraint Order and subsequent contempt hearings is justified with reference to the content of the regulated speech, failure to narrowly tailored to a significant government interest, and failure to provide ample alternative channels of communication.  Accordingly, the Plaintiff is entitled to prospective and injunctive reliefs to enjoin Referee Clysdale's Prior Restraint contempt hearings and/or associated contempt hearings where Prior Restraint is used to regulate speech e.g., Judge Atwal and Referee Snow-Caster's contempt hearings to regulate legitimate First Amendment speech.

A.  <u>The Prohibition Against "Writings or other Communications" is Overly Broad and Unconstitutional as Applied to a HRO</u>

As an initial matter, it remains readily apparent that the October 2nd, 2017 Prior Restraint order is unconstitutional.  In *RAV v. City of St. Paul,* the U.S. Supreme Court held in an overwhelming 9-0 vote that even a "fighting words" doctrine is "facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses." *RAV v. City of St. Paul*, 505 US 377 (1992).

Here, we have just that.  The Prior Restraint order is prohibiting legitimate First Amendment speech based on speaking about City Attorney Middlecamp's unethical activities. In *Rav*, the City of Saint Paul sought to enjoin any speech that it found abhorrent.  Any

reasonable person would find *Rav's* behavior - burning a cross to elicit a racial reaction – to be abhorrent and unreasonable.  Here, too, Referee Clysdale (with offices in Saint Paul) goes far beyond her judicial boundaries in limiting and regulating virtually all speech about a public official.

### B. The Prohibition Against "Made Available for Public Hearing" are Overly Restrictive and Unconstitutional as Applied to a HRO Where City Attorney Middlecamp Has No Reasonable Expectation of Privacy

The Idea that Referee Clysdale and the Judicial Officers enforcing Prior Restraint Orders vis-à-vis bogus contempt hearings would inappropriately attempt to restrict Plaintiff from publishing public documents i.e., seeking legal redress in federal court to thwart the two-year campaign of harassment is simply astonishing and entirely wrongful.  Indeed, in *Beahrs v. Lake*, the Minnesota Court of Appeals held

> The record does not support the district court's conclusion that appellant's mailings adversely affected respondent's safety, security, or privacy. Appellant sent only accurate copies of public records that he acquired through legitimate means. Although this may have embarrassed respondent, disseminating accurate copies of public records does not constitute harassment sufficient to justify a restraining order. Respondent had no legitimate expectation of privacy in those documents.

(*Beahrs v. Lake*, Minn. Ct. Appeals. 1998.)  citing *Keezer v. Spickard*, 493 N.W.2d 614, 619 (Minn. App. 1992) (constitutional right of privacy does not include right to prevent disclosure of personal information collected by government),

### C. The Applicability of the *Younger* Abstention Doctrine

Under the *Younger* abstention doctrine, "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be

presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237-38 (1984). The three conditions are "(1) whether the action complained of constitutes an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 477 n.1 (8th Cir. 1998)

Thus, in order for Younger abstention to be appropriate, a plaintiff generally must have an "opportunity to raise and have timely decided by a competent state tribunal the constitutional claims at issue in the federal suit." *3005 Cedar, LLC v. City of Minneapolis*, 2010 WL. 455307 at *3 (D.Minn. Feb. 3, 2010). Here, Plaintiff contends that Defendants do not provide Plaintiff an adequate or meaningful opportunity to seek review of his constitutional claims at issue in this proceeding and thus *Younger* abstention is inappropriate. As an initial matter, the Minnesota Judicial Branch and Minnesota Civil Procedural rules are completely devoid of any reference to, much less applicable procedures, for prior restraint contempt proceedings by collateral estoppel/collateral bar rule. It is unclear what rules of practice apply, what disclosure Plaintiff is entitled to in pursuing his constitutional claim or even how Plaintiff could raise his constitutional claims within the context of the Prior Restraint contempt proceeding(s). With the deliberate lack of any guidance by the Minnesota Judicial Branch or Minnesota Civil Procedural rules either in statute or in court rules, it cannot be said that Plaintiff has a meaningful or adequate opportunity to seek review of his constitutional claims. Next, the apparent policies and the procedures of the Minnesota Judicial Branch demonstrate that it has a pattern and practice of not affording accused litigants under a harassment restraining order meaningful review in Prior Restraint collateral estoppel contempt proceeding(s). As discussed in the Amended Complaint, Referee Clysdale's

10

October 2nd, 2017 order granting Prior Restraint was in effect an overly restrictive and plainly

unconstitutional decision. (*See* Am. Compl. at ¶¶ 108.) There was no factual or legal analysis

whatsoever in the decision. (*See id.*) Such a contempt proceeding brought in pursuant of this

decision fundamentally interferes with a litigant's right to meaningful review, right to seek

meaningful appellate review and right to fair notice. Even worse, Referee Clysdale took bad-

faith actions to dismiss Plaintiff's case against City Attorney Middlecamp claiming "waived

appearance" even though Plaintiff was seated before her and just went through a three-hour

grueling trial.  "Absent a record of the proffered evidence and the trial court's reasons for

excluding it, meaningful appellate review is virtually impossible." *Badami v. Flood*, 214 F. 3d

994 (Court of Appeals, 8th Circuit 2000) ("[T]he absence of any rationale in the decision for the

particular amounts awarded makes meaningful appellate review impossible."); *Awolsei v.*

*Ashcroft*, 341 F.3d 227, 232 (3d Cir. 2003) ("In order for use to be able to give meaningful

review to the BIA's decision, we must have some insight into its reasoning.").What is all the

more concerning is the fact that the Defendants have conceded that such Prior Restraint decisions

on harassment restraining orders are uniformly common place in Ramsey County and the state.

Lastly, and most important, the Defendants do not meaningfully or adequately

provide Plaintiff an opportunity to raise his constitutional claims asserted in this matter where the

improper and unconstitutional pattern of conduct engaged in by the Defendants forms a large

part of Plaintiff's constitutional claims in this action e.g., bankrupting him financially so as to

prevent his adequate right to seek meaningful appellate review.  See *Hartford Courant Co. v.*

*Pellegrino*, 380 F.3d 83, 101 (2d Cir. 2004) (holding that because the "procedures … [and]

unauthorized actions of the [state] court administrators [] form the gravamen of the federal

plaintiffs' complaint … [t]he state case … [did] not provide a meaningful opportunity of review

of the federal plaintiffs' constitutional claims"); see also *Gisbson v. Berryhill*, 411 U.S. 564

(1973) (holding that federal courts may give relief, notwithstanding the existence of pending

state proceedings, if state tribunals are biased and are not to be trusted on the particular issue).

As Plaintiff sets forth in detail in the Amended Complaint, Defendants have fundamentally

denied Plaintiff any meaningful review of his appeals in *Miller v. Fredin* and his claims in the

collateral Prior Restraint estoppel contempt matter are effectively completely barred by years of

Jurisprudence. With respect to *Miller v. Fredin*, the Minnesota Court of Appeals issued its

January 24, 2017 decision affirming Referee Street's March 21, 2016 Decision in which it failed

to address a single legal point Plaintiff raised on appeal. (See Am. Compl. at ¶¶ 40-45.) Instead,

it issued a conclusory decision that ostensibly twisted Plaintiff's arguments and was on its face

inconsistent with Referee Street's March 21, 2016 Decision. (*See id*.)

   This leads to a more important point in that the Minnesota Court of Appeals has issued

decisions involving Plaintiff with demonstrably conflicted fact-finders. In the day before

officially releasing the decision, City Attorney Middlecamp generated a Tweet to prejudice the

Plaintiff and showing of substantial bias and/or leaking.   And, went on to release at least forty

Tweets to thousands of people.  These facts pertaining to City Attorney Middlecamp evidence a

decidedly improper pattern of unconstitutional conduct by the Minnesota Court of Appeals as it

pertains to review of Plaintiff's claims in that court. *Mistretta v. U.S*., 488 U.S. 361, 404 (1989)

("[T]he Constitution … does not forbid judges to wear two hats; it merely forbids them to wear

both hats at the same time.").  It bears noting, Judge Kevin G. Ross's deliberate attempts to

create a tabloid decision only perpetuated harassment in an effort to deprive Plaintiff of his

constitutional rights to legal redress and meaningful review.

Also, the Referee Clysdale's conduct with respect to the October 2nd, 2017 decision granting Prior Restraint very much forms the basis of Plaintiff's constitutional claims in this matter. As set forth in the Amended Complaint, Referee Clysdale rendered the October 2nd, 2017 decision granting Prior Restraint and the December 19th, 2017 Show Cause decision before Plaintiff even had an opportunity to seek review of Decision.  This fundamentally undermined Plaintiff's right to seek meaningful appellate review of the Decision as the Referee Clysdale had effectively predetermined the appeal by trapping the Plaintiff by the Collateral Bar rule without the benefit of Appellate review or success. (See Am. Compl. at ¶¶ 7.)  Similarly, the fact that the October 2nd, 2017 decision was an ad-hominem attack on Plaintiff denied Plaintiff his right to meaningful review of his claims in opposition to the application of Prior Restraint and the Collateral Bar Rule, the right to seek meaningful appellate review and the right to fair notice of the Referee Clysdale's findings going into the mitigation/aggravation proceedings. (*See Id.*)

### D.   The Exceptions to the *Younger* Abstention Doctrine

Even if this Court were to determine that the *Younger* abstention is applicable, the facts of this matter place it squarely within the limited exceptions to the doctrine. Indeed, "[d]espite the strong policy in favor of abstention, even where *Younger* would otherwise apply, a federal court may still intervene in state proceedings if the plaintiff demonstrates bad faith, harassment or any other unusual circumstance that would call for equitable relief." Spargo, 351 F.3d at 78, fn. 11 (2d Cir. 2003) (citing Diamond "D" *Contruction v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)).  In other words, "even if otherwise appropriate, abstention will be refused if the state proceeding was brought in bad faith or was motivated by a desire to harass." *Huffman v. Pursue*, Ltd., 420 U.S. 592, 611 (1975); see also *Williams v. Lambert*, 46 F.3d 1275, 1282 (2d Cir. 1995) (holding *Younger* abstention applies "in the absence of bad faith, fraud or irreparable harm").

E.   The Applicability of the Bad Faith / Fraud Exception

As the facts alleged in the Amended Complaint make certain, the "bad faith" or fraud exception to the *Younger* doctrine applies in this case. "To establish the bad faith exception to *Younger*, a plaintiff must show that the party bringing the state action has no reasonable expectation of obtaining a favorable outcome, but rather brought the proceeding due to a retaliatory, harassing, or other illegitimate motive." *Schorr v. Dopico*, 205 F.Supp. 359, 364 (S.D.N.Y. 2016). Furthermore, a federal court may refuse to abstain when "a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." *Cullven v. Fliegner*, 18 F.3d 96, 103-04 (2d Cir. 1994). The record in *Miller v. Fredin, Schaefer v. Fredin, and Middlecamp v. Fredin* irrefutably demonstrates that the City Attorney Middlecamp, Defendant Miller, and Defendant Schaefer fraudulently brought the Prior Restraint contempt hearings against Plaintiff in demonstrable bad faith and with a retaliatory motive.

i.   Plaintiff Does Not Have an Avenue Open for Review of the Constitutional Claims in State Court

At the outset, Referee Clysdale's October 2nd, 2017 Prior Restraint Order afforded the Plaintiff several open avenues to redress constitutional claims.  Unfortunately, each of those avenues has expired e.g., appeal the original order and/or motion for a modification to the order. Here, Plaintiff was given very little notice and is deprived of the right to modify the order through motion practice prior to the contempt hearings.  For example, Plaintiff filed a motion to modify the Prior Restraint Order citing legitimate First Amendment claims.  Instead, Judge Warner again thwarted Plaintiff's constitutional claims by refusing his ability to conduct his motion prior to the contempt hearing. (*See* Am. Compl. at ¶ 117. and February 13th, 2018 Tran.)

And, this pattern of bad-faith conduct is present in each contempt hearing brought by Defendant

Miller and Defendant Schaefer.

The Collateral Bar rule as applied to most judicial orders will bar any meaningful review

and/or success to guarantee Plaintiff's constitutional rights through appealing any contempt

ruling.  See *Walker v. City of Birmingham*, 33 U.S. 307 (1967)

In other words, Plaintiff is afforded no avenues for guaranteeing his constitutional claims

in state court under any circumstance.  And, will be blocked by collateral estoppel/collateral bar

rule on Appeal of any contempt ruling.

ii.     Bad-Faith and Reliance on Fabricated Findings

Referee Clysdale acted in bad faith by bringing a Prior Restraint order to unlawfully

block Plaintiff's speech.  Furthermore, the three Petitioners in this case e.g., City Attorney

Middlecamp, Defendant Schaefer, and Defendant Miller committed fraud in bringing and/or

coaching knowingly false police reports, tabloid articles, revenge porn Twitter attacks, swat

raids, and even instigating bogus criminal charges for one purpose: deprive Plaintiff of his

guaranteed rights to First Amendment speech guaranteed under the U.S. Constitution and to

retaliate over petty grievances by bankrupting him to prevent him from obtaining legal redress.

While Referee Clysdale and the state court were made aware after numerous attempts by the

Plaintiff through appropriate legal filings, the state court and thus Defendant's wholly ignored

this evidence in an effort to rely on bad-faith and fabricated fraudulent findings by the three

petitioners in this matter.

There are no less than three striking examples of this.  First, Defendant Miller admitted to

coaching Defendant Schaefer in obtaining a fraudulent restraining order.  (*See* February 22nd,

2017 City Pages Article.)  In order to obtain her harassment restraining order, Defendant

Schaefer made no less than twenty (20) knowingly false police reports claiming telemarketers were indeed the Plaintiff. A simple review of the Internet would have proven each of these numbers to be telemarketers. Instead, Referee Clysdale and thus Defendant's clearly acted in bad-faith to ignore the concocted story that is being used to retaliate against the Plaintiff for standing her up in March 2014.

Second, Defendant Miller and Defendant Schaefer asked City Attorney Middlecamp to both smear Plaintiff on her public Twitter platform and within the *City Pages* and reach out to law enforcement and use her public position to instigate a swat raid and frivolous criminal charges to block legitimate First Amendment criticism of their conduct. And, Defendants once more act in bad-faith to whitewash and wholly ignore these actions by Petitioners.

Lastly, City Attorney Middlecamp failed to provide critical subpoena results in order to perpetuate a pattern of harassment through fraudulent HRO's in state court. And, Defendants act in bad-faith to ignore this evidence.

There is no better evidence of the Defendant's bad faith and fraud in pursing the Prior Restraint contempt proceeding(s) against Plaintiff than its reliance on findings that it knows not only to be without merit, but to be entirely fabricated by a vindictive trial referee. Indeed, Referee Clysdale does not even deny these assertions. Yet, it continues to demand that Plaintiff be penalized based on these demonstrably fabricated and contrived findings rendered in a manner inconsistent with Due Process in violation of Rule 3.8 of the Rules of Professional Conduct. Thus, based on these facts alone, Plaintiff's request to enjoin Prior Restraint contempt proceeding(s) that fall squarely within the "bad faith" and/or fraud exception to the *Younger* abstention doctrine.

16

iii.    Reliance on Findings Plaintiff Was Not Given Notice or a Full and
Fair Opportunity to Defend before an Impartial Tribunal

Another illustration of the Defendant's bad faith is the fact it relied upon findings

rendered by Referee Clysdale that it knew were never noticed to Plaintiff and which

Plaintiff had no meaningful opportunity to defend. Due Process requires a "hearing before an

impartial board or tribunal.".  *King v. University of Minnesota*, 774 F.2d 224, 228 (8th Cir.

1985). Thus, in order for Defendant's to pursue Prior Restraint contempt proceedings by

collateral estoppel, as a threshold matter it must have a good faith belief that the requirements of

Due Process were met. That is Plaintiff was given notice and an "opportunity to be heard" as to

the specific findings it relied on in Referee Clysdale's Decision.  See *Riggins v. Bd. of Regents of*

*University of Nebraska*, 790 F. 2d 707 – (Court of Appeals, 8th Circuit). This is particularly so in

contempt proceedings where litigants are entitled to procedural due process, which includes fair

notice.

iv.    The Defendants and City Attorney Middlecamp, Defendant
Schaefer, and Defendant Miller Have Exculpatory Evidence
Illustrating Their Bad Faith

One of the most important facts mentioned in the Amended Complaint is that the

Defendants and City Attorney Middlecamp, Defendant Schaefer, and Defendant Miller are

prosecuting Plaintiff despite the fact that they have extensive exculpatory evidence in their

possession.  For example, all criminal charges were declined multiple times between March 21st,

2016 until City Attorney Middlecamp intervened to bring bogus frivolous charges over an

alleged social media post that was protected by legitimate First Amendment protections.  As

detailed in the Amended Complaint, Defendant Schaefer made outrageous claims that originated

from telemarketers.  (See Am. Compl. at ¶¶ 33.)

Similarly, Plaintiff had no interaction with City Attorney Middlecamp whatsoever prior to her petition for an HRO in state court.  And, had never met or spoken to Defendant Schaefer beyond standing her up for a failed blind-date.   ((See Am. Compl. at ¶¶ 7, 28.)

What is most disturbing of all is that Defendants have pursued contempt proceedings against Plaintiff even where it has presented Plaintiff with evidence that it knew Referee Clysdale had acted vindictively to block Plaintiff's civil rights and to inflict harm on Plaintiff.

> v.    The Prior Restraint Contempt Proceedings Is Part of an Overall Scheme of Harassment Directed at Plaintiff

The Prior Restraint contempt proceedings was filed as part of a continuation of bad faith and harassing conduct directed at Plaintiff by Defendants and City Attorney Middlecamp, Defendant Schaefer, and Defendant Miller. As set forth in the Amended Complaint, prior to filing the various Prior Restraint contempt proceedings, City Attorney Middlecamp, Defendant Miller, and Defendant Schaefer orchestrated a Twitter media attack on @CardsAgstHrsmt and the *City Pages* to uproot and destroy Plaintiff's livelihood and ability to support himself and/or his family.  Defendant Schaefer made wholly frivolous assertions in the form of twenty irrefutably false police reports.  A swat raid was instigated by City Attorney Middlecamp, Defendant Schaefer, and Defendant Miller to serve civil paperwork.  (See Am. Compl. at ¶¶ 46-69.)

Despite the immense evidence clearly indicating Plaintiff's overwhelming victimization, Defendants did nothing to protect the Plaintiff, and Referee Clysdale openly mocked, and dismissed his legal filings that provided both irrefutable proof of this victimization.  Instead, Defendants have enabled this conduct which is embarrassing to the Minnesota Judicial Branch

and openly invited contempt proceedings to thwart legitimate First Amendment speech that is used to bring awareness to these unlawful actions.

And, it should further be reiterated that the current array of Prior Restraint contempt proceedings is one of a number of frivolous collateral proceedings instigated by Defendant Schaefer and Defendant Miller against Plaintiff in retaliation for Plaintiff exercising his right to petition against them.

Unfortunately, this includes baseless and admittedly retaliatory criminal proceedings initiated by City Attorney Middlecamp against Plaintiff.  (*See Id.*)  Consequently, this Court should decline to exercise *Younger* abstention in this matter where the evidence demonstrates that the Defendants and City Attorney Middlecamp, Defendant Miller, and Defendant Schaefer have pursued Prior Restraint contempt proceedings against Plaintiff in bad faith and as part of a pattern of harassment and retaliation against Plaintiff.

vi.    The Applicability of the "Extraordinary Circumstances" Exception

The facts alleged in the Amended Complaint demonstrate that this case falls within the "extraordinary circumstances" exception to the *Younger* doctrine. The Second Circuit has held that there are "two predicates for application of [the] exception: (1) that there be no state remedy available to meaningfully, timely and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant with suffer 'great and immediate' harm if the federal court does not intervene." *Diamond "D" Constr.*, 282 F.3d at 201. Both of these prongs are satisfied by the facts alleged in this matter.

First, there is no adequate state court remedy to meaningfully, timely or adequately remedy the constitutional violations alleged in the Amended Complaint. As discussed above, many of the alleged constitutional violations emanate from the conduct of the Defendants itself.

19

This includes the conduct of City Attorney Middlecamp tainting panels, the pattern of issuing conclusory and decidedly inaccurate decisions denying Plaintiff meaningful review and in effect prejudicing Plaintiff's appeal of the *Miller v. Fredin* Decision. This is compounded by the fact that the Defendants have explicitly stated that it will improperly thwart Plaintiff's ability to modify any Prior Restraint order prior to any contempt proceedings and enable multiple contempt proceedings in conjunction with one another. (See Am. Compl. at ¶¶ 70.)

Moreover, there is no state court procedure that Plaintiff can invoke at this time to remedy the constitutional violation. There is no procedure either in court rule or statute that allows Plaintiff to file any appeal or remediation in the Minnesota Judicial Branch or the Court of Appeals against the Defendants. Any petition or proceeding filed in the Minnesota Judicial Branch requesting that it declare its own actions and conduct unconstitutional would be a futile endeavor.  And, as mentioned above, the Minnesota Judicial Branch rules do not even mention collateral estoppel/bar Prior Restraint contempt proceedings, much less provide an avenue to challenge the constitutionality of the Defendant's actions. With respect to the second prong, Plaintiff faces imminent and immediate harm if this Court does not intervene as discussed above. If Prior Restraint contempt is imposed, Plaintiff will not be able to continue in the profession or earn a living.  And, with the Defendant's already hearing two of the three Prior Restraint contempt proceedings with a decision likely being rendered within days, this threat of irreparable harm is immediate.

II.    Plaintiff Will Suffer Irreparable Injury Without the Injunction

In addition to having a high likelihood of success on the merits, Plaintiff will suffer irreparable harm unless he receives the requested injunctive relief.  As noted in the initial Amended Complaint, Plaintiff has forever lost his opportunity to legitimate First Amendment

speech while suffering embedded collateral estoppel inherent to special trial rules in state court e.g., inability to appeal (past a specified deadline) and/or a new trial.  Here, too, Plaintiff wishes to engage in First Amendment activities that are "'both certain and great . . . actual not theoretical,'" *England*, 454 U.S. at 297 (citation omitted), are "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm," id.  (citation and emphasis omitted), and in which "the injury [is] beyond remediation." Id. Plaintiff is barred by criminal penalties from engaging in First Amendment expression and association activities he may wish to do, which "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiff has decided that it will not do its intended First Amendment activities as planned unless it receives judicial protection, and such self-censorship "[i]s a harm that can be realized even without actual prosecution." *Virginia v. American Bookseller's Ass'n Inc*., 484 U.S. 383, 393 (1988). It has "establish[ed] that [it is] or will be engaging in constitutionally protected behavior," which demonstrate[s] that the allegedly impermissible government action would chill allowable individual conduct." England, 454 F.3d at 301. "[Plaintiff's] 'First Amendment interests are either threatened or in fact being impaired at the time relief is sought.'" Id. (citation omitted). This constitutes irreparable harm.[1]  And *FEC v. Wisconsin Right to Life*, 127 S. Ct.

---

[1] [I]n cases involving a claim by movant of interference with protected freedoms or other constitutional rights, the finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant, but depends on an appraisal of the validity, or at least the probable validity, of the legal premise underlying the claim of right in jeopardy of impairment. It often happens that when the parties present conflicting claims of rights and conflicting fears of threatened injury, one from the impact of the activity sought to be restrained, the other from the impact of any injunctive order, the situation realistically facing the court is this, that one party or the other will be injured whichever course is taken. A sound disposition in the interest of justice from the process of discerning and weighing of pertinent interests must depend on a reflective and attentive appraisal as to the outcome on the merits. [*Delaware & H. Ry. Co. v. United Transp. Union*, 450 F. 3d 603, 619-20 (D.C. Cir. 1971).]

2652, 2670 (2007) ("WRTL") rejected the notion that a speaker could just change the message, e.g., by not mentioning a federal candidate, id., because "the rule of protection under the First Amendment [is] that a speaker has the autonomy to choose the content of his own message.' Id. (citation omitted).[2]

### III.    The Injunction Will Not Substantially Injure Others

As set forth herein, there is no harm to anyone else.  Various Defendants in this matter do not suffer any perceived or recognizable harm to their own constitutional rights to Due Process and/or freedom of speech.  In fact, City Attorney Middlecamp has freely exercised her rights to free speech and continues to do so even after destroying Plaintiff's career.  In other words, she has victimized Plaintiff and improperly uses contempt hearings to abridge Plaintiff's constitutional rights to criticize public officials, unfortunately.  However, an injunction enjoining Prior Restraint allegations within state Orders and/or contempt hearings will not harm City Attorney Middlecamp's and/or various defendants to execute their own guaranteed rights.  The questions of harm to others and serving the public interest are, of course, inversely proportional to the likelihood of success on the merits. As the District of Columbia Circuit said *in United*

_____

[2] In the WRTL litigation, the FEC actually opposed the preliminary injunction on the novel theory that this Court's preliminary injunction would not provide WRTL any effective protection because in the event WRTL ultimately lost the FEC, or the Attorney General (if a violation were knowing and willful), could still bring an enforcement action. See Defendant Federal Election Commission's Opposition to Plaintiff's Motion for a Preliminary Injunction at 40-43, *WRTL v. FEC,* 466 F. Supp. 2d 195 (D.D.C. 2006) (No. 04- 1260). If the FEC's novel theory were correct, this Court's preliminary injunctions would be meaningless, which the present Plaintiff does not believe is true. And there is no reason to believe that the Attorney General would not abide by any injunction issue. Moreover, the FEC's novel position is contrary to the position of the four dissenting Justices in WRTL who believed that this Court's preliminary injunction would provide an adequate remedy to protect a plaintiff's rights. See WRTL, 127 S. Ct. at 2704 (Souter, J., joined by Stevens, Ginsburg & Breyer, JJ.) It is likely that the other Justices would agree that a federal court's preliminary injunction is efficacious.

*Transportation Union*, 450 F.3d at 620, in cases where harms are claimed on both sides, the Court should look to the merits. (See Am. Comp. ¶¶ 70/VI.). Given the high likelihood of success on the merits, the likelihood of harm to the Defendants or anyone else is proportionally diminished.

Nonetheless, the Defendants will doubtless argue that it is harmed if it is denied the opportunity to enforce a statute, as is it did in its successful effort to deny WRTL's First Amendment right to timely broadcast its 2004 anti-filibuster ads. But that generalized "harm" cannot control or it would ban all preliminary injunctions in all cases where the constitutionality of a statute (or a regulation) is challenged, making Federal Rule of Civil Procedure 65 (and its authorizing statute) a meaningless rule as applied to the government. Such a generalized "harm" will always be present for any agency or other enforcement entity—even in the context of litigation over highly-protected First Amendment activities. The First Amendment is antithetical to any such strong presumption of the constitutionality of a state statute that would underpin the notion that the state is automatically harmed by inability to enforce a statute that has been credibly challenged as to its compliance with First Amendment mandates.

Finally, there is no harm to anyone else. To be sure, there may be those who would prefer that the Plaintiff be censored, but there is no cognizable interest to be considered here where the state's ability to regulate individual speech is the foundation for regulation.  So, any possible perceived "harm" is not cognizable here—especially given the high likelihood of success on the merits of the count related to that letter.

IV.    The Injunction Furthers the Public Interest

As with harm to others, the question of the public interest follows the likelihood of success on the merits. Clearly, "[t]he First Amendment, in particular, serves significant societal

interests." *First Nat'l Bank of Boston* v. *Bellotti*, 435 U.S (1978). at 766. It is clearly in the public interest for Americans to be able to associate and express themselves freely where there is no cognizable governmental interest justifying restriction. And it is in the public interest to receive the information that Plaintiff may offer in federal complaints and/or whistle blower websites. Therefore, the requested injunctive relief serves the public interest.

V.      Plaintiff Requests a Bad-Faith *Younger* Hearing

Plaintiff asserts numerous facts and proffers evidence illustrating that Defendants and City Attorney Middlecamp, Defendant Miller, Defendant Schaefer, and Referee Clysdale has pursued improper sanctions and Prior Restraint discipline through the March 21, 2016 *Miller v. Fredin* hearing in bad faith, through fraudulent representations to the Ramsey County District Court and in a manner wholly inconsistent with Due Process. As a result, this Court should hold an evidentiary hearing to resolve any factual disputes on whether *Younger* abstention is appropriate. See *Kern v. Clark*, 331 F.3d 9, 10 (2d Cir. 2003); *Sica v. Connecticut*, 331 F.Supp.2d 82, 87 (D. Conn. 2004) ("[T]he Second Circuit has indicated that when a plaintiff seeks to avail herself of the Younger exceptions, a district court ordinarily should hold an evidentiary hearing."). Plaintiff therefore respectfully requests that this Court hold a bad-faith *Younger* evidentiary hearing in conjunction with any preliminary injunction hearing ordered on this Motion.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that this Court grant the instant Motion and issue a preliminary injunction enjoining the *Middlecamp v. Fredin, Schaefer v. Fredin, and Miller v. Fredin* contempt hearings imposing Prior Restraint asserted against Plaintiff until a final decision on the merits in this matter.

Dated: February 26th, 2018
Hudson, WI

/s/ Brock Fredin

_____

Brock Fredin
1905 Iris Bay
Hudson, WI 54016
(612) 424-5512 (tel.)
brockf12@gmail.com
*Plaintiff, Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27TH day of February, 2018 I caused the foregoing Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction and Younger Bad Faith Hearing to be filed with the Clerk of the Court using the CM/ECF system, which will then serve such filing to the following individuals registered to use the CM/ECF system in this matter.  I will provide personal process service of to the following:


     Elizabeth A. Clydale
     David E. McCabe
     Grace Elizabeth Miller
     Catherine Marie Schaefer
     Lindsey Middlecamp
     Teresa Warner
     Tony Atwal
     Christy Snow-Kaster


                                         _____ /s/ Brock Fredin_____