Fredin v. Clysdale

U.S.D.C. Case No. 18-cv-510 (SRN/HB)

# EXHIBIT 1

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| RAMSEY COUNTY | SECOND JUDICIAL DISTRICT |

Lindsey Middlecamp,

    Petitioner,

vs.

Brock Fredin,

    Respondent.

Court File: 62-HR-CV-17-233

**ORDER AND MEMORANDUM**

The above-entitled matter came on for an evidentiary hearing before the Honorable Teresa R. Warner, Judge of District Court, Juvenile and Family Justice Center, 25 W. 7th Street, St. Paul, MN, 55102, on February 14, 2018, pursuant to an Order to Show Cause for Contempt under Minn. Stat. § 609.748, subd. 6(i), filed on December 22, 2017.

Lindsey Middlecamp, Petitioner, appeared personally and was *pro se* in this matter.

Brock Fredin, Respondent, appeared personally and was *pro se* in this matter.

The Court considered the evidence received at the evidentiary hearing, the arguments made by Petitioner and Respondent at the evidentiary hearing, the laws of the State of Minnesota, and the following documents:

1. Affidavit of Lindsey Middlecamp, filed on December 19, 2018;
2. Memorandum in Support of Respondent's Motion to Dismiss, filed on December 30, 2017; and
3. Affidavit of Brock Fredin, filed on December 30, 2017.

This Order and Memorandum also addresses Petitioner's Notice of Motion and Motion, filed on February 16, 2018, and Respondent's Memorandum in Support of Striking Affidavit of David Middlecamp, filed on February 26, 2018.

Based upon the entire file, record, and proceedings herein, the Court makes the following:

**ORDER**

1. There is a preponderance of evidence showing that Respondent violated the October 2, 2017, Harassment Restraining Order.

2. This Order and Memorandum will be referred to the appropriate prosecuting authority for possible prosecution by Court Administration, pursuant to Minn. Stat. § 609.748, subd. 6(i).

3. Respondent is required to remove the content of the websites that is in violation of the October 2, 2017, Harassment Restraining Order.

4. The Harassment Restraining Order, filed on October 2, 2017, remains in effect until September 21, 2019. The Respondent shall not engage in any behavior prohibited by that Order.

5. Petitioner's Notice of Motion and Motion, filed on February 16, 2018, is **DENIED.** As a result, Respondent's Memorandum in Support of Striking Affidavit of David Middlecamp is not considered.

6. The attached Memorandum is incorporated herein and made part of this Order.

7.  A copy of this Order and Memorandum shall be served upon all parties and participants, or their representatives, in this case. Where a person or entity is unrepresented, service shall be made upon the party by e-service, if possible, or U.S. Mail at their last known address.

Dated this 28th day of February, 2018.

**BY THE COURT:**

_____
The Honorable Teresa R. Warner
Judge of District Court

## MEMORANDUM

PROCEDURAL HISTORY

On December 19, 2017, Petitioner filed an Affidavit, under Minn. Stat. § 609.748, subd. 6(i), seeking an order requiring the respondent to show cause why he should not be found in violation of the October 2, 2017, Harassment Restraining Order. On December 22, 2017, an Order to Show Cause for Contempt was issued. A hearing to address that Order was held on January 4, 2018. An Order for Continuance was filed that same day, setting the matter on for an evidentiary hearing. Prior to the evidentiary hearing, Respondent filed two motions, one on January 31, 2018, and another on February 1, 2018. Both of those motions were deficient under Rule 115.02 of the Minnesota General Rules of Practice for the District Courts.

On February 9, 2018, Respondent filed correspondence to the Court requesting leave to file a motion to reconsider related to the deficiencies in his filings from January 31, 2018, and February 1, 2018. The evidentiary hearing on the Order to Show Cause took place on February 14, 2018. At that hearing, the Court denied Respondent's request to file a motion to reconsider because he did not properly serve his request under Rule 115.11 of the Minnesota General Rules of Practice for the District Courts. Thereafter, the Court received evidence and heard arguments from both the Petitioner and the Respondent on the Order to Show Cause. At the conclusion of the hearing, the Court took under advisement the issue of whether Respondent had violated the Harassment Restraining Order, filed on October 2, 2017.

ORDER TO SHOW CAUSE

Respondent raised a First Amendment objection to the Harassment Restraining Order (HRO), filed on October 2, 2017. Specifically, Respondent claimed that #8 of the Order portion of the HRO[1] acted as an unconstitutional prior restraint of speech. The Court, at the February 14, 2018, evidentiary hearing told the partied that the First Amendment issue was an issue for appeal of the HRO itself. However, even if the Court did address that issue at this stage in the case, it is unlikely to succeed. *See Polinsky v. Bolton*, No. A16-1544, 2017 WL 2224391, at *4–7 (Minn. Ct. App. May 22, 2017) (rejecting First Amendment challenges to a speech restriction identical to the one that Respondent complains about in this case).[2] In other unpublished cases, the Minnesota Court of Appeals has rejected First Amendment challenges to HROs restricting speech. *See, e.g., Johnson v. Arlotta*, No. A11-630, 2011 WL 6141651, at *4-5 (Minn. Ct. App. Dec. 12, 2011) (rejecting a First Amendment challenge to an HRO); *Banken v. Banken*, No. A11-2156, 2013 WL 490677, at *7 (Minn. Ct. App. Feb. 11, 2013) (same); *Westbrooke Condo. Ass'n v. Pittel*, No. A14-0198, 2015 WL 133874, at *2-3 (Minn. Ct. App. Jan. 12, 2015) (same).[3] Given this legal background, a First Amendment challenge to the HRO in this case is likely unfounded.

---

[1] "Writings or other communications by Respondent which are made available for public hearing or viewing and which contain addresses, telephone numbers, photographs or any other form of information by which a reader may contact, identify or locate Petitioner are acts of harassment and are prohibited by this order. Any communications made by Respondent under an identity or auspices other than his true name and which refer to Petitioner are acts of harassment and are prohibited regardless of the truth or falsity of any statement made about Petitioner."

[2] The Court acknowledges that *Polinsky* is not precedential. Minn. Stat. § 480A.08, subd. 3(c) ("Unpublished opinions of the Court of Appeals are not precedential."). Rather, it is persuasive to this Court given that it addresses the exact same speech restriction, and, as far as the Court can tell, the same legal objections to that restriction. *See Donnelly Bros. Const. Co. v. State Auto Prop. & Cas. Ins. Co.*, 759 N.W.2d 651, 659 (Minn. Ct. App. 2009) (citing *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn.App.1993)) (stating that unpublished opinions of the Court of Appeals may be persuasive); *see also City of Saint Paul v. Eldredge*, 788 N.W.2d 522, 527 (Minn. Ct. App. 2010), *aff'd*, 800 N.W.2d 643 (Minn. 2011) (stating that an unpublished opinion should be on-point regarding a particular legal issue in order to be persuasive).

[3] *Arlotta*, *Banken*, and *Pittel* are not precedential, but they are persuasive given they deal with similar legal arguments to that of the Respondent.

5

In order to decide whether the Respondent has violated the HRO, the Court must apply the appropriate standard of proof. The statute is largely silent on this issue, only stating that the Court may issue an HRO in the first instance if the Court finds, among other things, "that there are reasonable grounds to believe that the respondent has engaged in harassment."[4] Minn. Stat. § 609.748, subd. 5(b)(3). The Court is persuaded that the standard of proof applicable to this case is a preponderance of the evidence. *See Latham v. Latham*, No. A11-1085, 2012 WL 686117, at *6 (Minn. Ct. App. Mar. 5, 2012) (concluding that "the preponderance-of-the-evidence standard applies" when issuing an HRO in the first instance).[5] A preponderance of the evidence standard is consistent with the statute. It would make little sense if a petitioner needed to prove their case by a preponderance of the evidence to have an HRO issued, but the Court must later be shown clear and convincing evidence to believe that the respondent violated the HRO and to give the petitioner the benefit of the HRO's protections. Given that the preponderance of the evidence standard applies, the Court must determine whether it is more likely than not that the Respondent violated the HRO filed on October 2, 2017. *See City of Lake Elmo v. Metro. Council*, 685 N.W.2d 1, 4 (Minn. 2004) (citing *Netzer v. N. Pac. Ry. Co.*, 57 N.W.2d 247, 253 (1953)) ("The preponderance of the evidence standard requires that to establish a fact, it must be more probable that the fact exists than that the contrary exists.").

The Petitioner asserted at the evidentiary hearing that the Respondent had violated the HRO in three ways: (1) the Respondent filed a federal, civil complaint against Petitioner which, in her view, unnecessarily listed her home address; (2) the Respondent created five websites which all contained a hyperlink to a hosted[6] copy of that federal complaint; and (3) on January 4, 2018, the

---

[4] The statute requires the same showing to issue a temporary restraining order. Minn. Stat. § 609.748, subd. 4(b).
[5] *Latham* is not precedential as it is also an unpublished case.
[6] As this Court understands the evidence, a copy of the federal complaint was placed on a private website for download; the hyperlinks were not directed to any public website that might have a copy of the complaint such as Pacer.

6

Respondent made comments to the Petitioner in the halls of the Juvenile and Family Justice Center, which she took as threating.

As an initial matter, the Court has little, if any, evidence about the events of January 4, 2018. There is a pending criminal case as to that matter.[7] At the February 14, 2018, evidentiary hearing, there was no evidence provided to the Court other than the assertions of Petitioner that it happened and of Respondent that it did not happen. The Court does not find a violation of the HRO due to Respondent's alleged conduct on January 4, 2018.

As it relates to the federal complaint, the Respondent stated that he included the Petitioner's address in the complaint to establish diversity jurisdiction.[8] The Petitioner asserted that her exact address is not necessary to establish diversity jurisdiction and that the Respondent intentionally included it in the complaint in order to publish her address to the public. However, the HRO did not go into effect until October 2, 2017. Minn. Stat. § 609.748, subd. 5(b) ("When a referee presides at the hearing on the petition, the restraining order becomes effective upon the referee's signature."). It is undisputed that the federal complaint was filed sometime in August of 2017. Respondent cannot violate an order of the Court if the order was not in effect when the conduct is alleged to have occurred. Even if the HRO was in effect, the evidence is unclear on what is required to establish diversity jurisdiction and the Court would not decide that legal issue. Consequently, the Court does not find the Respondent violated the HRO due to the inclusion of Petitioner's address in his federal complaint.

---

[7] Court File No. 62-CR-18-157
[8] The Petitioner is a resident of Minnesota, whereas the Respondent is a resident of Wisconsin. One of the ways to establish federal subject matter jurisdiction is to establish diversity jurisdiction. Diversity jurisdiction may be established if the plaintiff and the defendant in a civil case are residents of different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §1332.

However, the facts established by the evidence show that Respondent did violate the HRO in connection with the content on the websites; the Court finds it is more likely than not that Respondent did create the content.[9] The content of the websites all show a similar theme: all of them included the specific grievances that the Respondent has against each person listed in the URL.[10] On several of the websites, there were photos of a search warrant being executed on what is reported by the websites to be Respondent's residence. The websites also contained pictures which are purportedly of the Respondent's mother during a medical emergency, allegedly induced by the search warrant's execution.[11] Each website included a hyperlink to the Respondent's federal complaint against Petitioner, which contained her exact home address. All of these facts, taken together, provide sufficient evidence to conclude that it is more likely than not Respondent that created the content of the websites as a way to air his grievances against the individuals listed in the URLs, and to highlight the Petitioner specifically.

Order #8 of the HRO states that "[w]ritings or other communications by Respondent which are made available for public hearing or viewing and which contain addresses, telephone numbers, photographs or any other form of information by which a reader may contact, identify or locate Petitioner are acts of harassment and are prohibited by this order." Posting a link to the federal complaint was a communication by Respondent which was made available to the public and contained Petitioner's address—the exact kind of information by which a reader could "contact,

---

[9] There is no evidence that the Respondent actually created the websites themselves. Whoever did so apparently went to great lengths to mask their identity. In any case, creating the websites themselves would not be a violation of the HRO against Respondent while the content of the websites could be, if open to the public.

[10] URL is an initialism for 'uniform resource locator.' In common usage, a URL is often referred to as the web address of a particular website. In this case, the URLs included catherineschaefer.net and refereeelizabethclysdale.com, as well as others. Catherine Schaefer has another, separate HRO against the Respondent. Referee Elizabeth Clysdale presided over several hearings related to the Respondent.

[11] The photos themselves have the subject's face partially covered by a black box. However, the websites allege they are of the Respondent's mother. The Court also notes that the photos appear to be of the same woman that accompanied Respondent to the February 14, 2018, evidentiary hearing.

8

identify or locate" the Petitioner in this case. That act was prohibited by and constitutes a violation of the HRO filed on October 2, 2017.

At the evidentiary hearing, the Court inquired as to the relief sought by the Petitioner. The Petitioner suggested fines, proceedings under Minn. Stat. § 588.10, and an extension of the HRO in this case for an additional 48 years up to the maximum of 50 years. Upon consideration of all the facts of this proceeding, the Court finds that the proper remedy for the violation of the HRO in this case is that the website content which linked to the Respondent's federal complaint should be removed. Based on the testimony taken at the February 14, 2018, evidentiary hearing, it is undisputed that the websites themselves have been removed and the content is no longer available. The Court will instruct Court Administration to refer this Order and Memorandum to the proper prosecuting authority as required by the statute, but there is no further relief necessary. Minn. Stat. 609.748, subd. 6(i) ("The court also *shall* refer the violation of the order to the appropriate prosecuting authority for possible prosecution under paragraph (b), (c), or (d).") (emphasis added).

PETITIONER'S MOTION AND RESPONDENT'S MEMORANDUM

On February 16, 2018, after the evidentiary hearing had taken place, Petitioner filed a Notice of Motion and Motion for the Court to reopen the record for consideration of additional forensic evidence and an Affidavit of David Middlecamp in support of that motion. The Petitioner cited no law in her motion that would allow the Court to reopen the record of the evidentiary hearing. However, she did assert that the record should be reopened because she was not provided adequate notice of Respondent's denial related to creation of the websites referenced in the Petitioner's December 19, 2017, Affidavit.

There is no reason for the Court to reopen the evidentiary hearing record to receive additional evidence. Nothing asserted in David Middlecamp's Affidavit is information which

9

could not have been discovered prior to the evidentiary hearing on February 14, 2018. Based on the history of this matter, Petitioner had adequate reason to know that Respondent would deny involvement in creating the websites and their content. Her bare assertion to the contrary is not sufficient to reopen the evidentiary hearing.

On February 26, 2018, Respondent filed a responsive Memorandum in Support of Striking Affidavit of David Middlecamp. If the Court denies Petitioner's motion *sua sponte*, the Court may enter a final order related to the February 14, 2018, evidentiary hearing without considering anything presented by the Respondent in that filing. Petitioner's motion is denied. The Court made its ruling on the Order to Show Cause for Contempt and the February 14, 2018, evidentiary hearing without considering any assertions made in Petitioner's February 16, 2018, Notice of Motion and Motion or any evidence from David Middlecamp's Affidavit.

CONCLUSION

Based upon all of the foregoing reasons, the Respondent is found to have violated the HRO filed on October 2, 2017. The content of the websites that is in violation of the HRO must be removed. The Court must refer this violation to the appropriate prosecuting authority for possible prosecution. No other relief is warranted at this time.

TRW